**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**ARIEL FERRUFINO MAMANI,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv779**

**JEFFREY CRAWFORD, *et al.*,**

**Respondents.**

# MEMORANDUM OPINION

This matter comes before the Court on Petitioner Ariel Ferrufino Mamani's *ex parte* Motion for Temporary Restraining Order (the "Motion"), (ECF No. 8), and Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Amended Petition"), (ECF No. 7).[1] In the Motion and accompanying Amended Petition, Mr. Mamani challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE's failure to provide him with a bond hearing under 8 U.S.C. § 1226 violates his statutory right to such a hearing and his constitutional right to due process under the Fifth Amendment to the United States Constitution.[2] (ECF No. 7 ¶¶ 14–25; ECF No. 8, at 4–5.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

[2] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

For the reasons articulated below, the Court will grant the Motion on an *ex parte* basis and order Respondents to provide Mr. Mamani with a full and fair bond hearing under 8 U.S.C. § 1226(a).

## I. Factual and Procedural Background

### A. Factual Background

Mr. Mamani is a citizen of Bolivia. (ECF No. 7 ¶ 2.) He "[e]ntered the United States without inspection in 2002." (ECF No. 7 ¶ 2.) Mr. Mamani has established a life in the United States: he "built a business" in the United States; pays taxes; and is married with children who are United States citizens. (ECF No. 7 ¶ 2.) On July 22, 2026, ICE officials arrested Mr. Mamani while he was driving. (ECF No. 7 ¶¶ 2, 8.) He has since been held "without a bond hearing" and is presently detained at the Farmville Detention Center. (ECF No. 7 ¶¶ 2, 3.)

### B. Procedural Background

On August 5, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1), and an accompanying motion for temporary restraining order, (ECF No. 2). Mr. Mamani's petition did not comply with Rule 2 of the Rules Governing Section 2254 Cases.[3] (*See generally* ECF No. 1.) On August 6, 2026, this Court denied Mr. Mamani's motion for temporary restraining order without prejudice for lack of jurisdiction. (ECF No. 4, at 3.)

On August 10, 2026, counsel for Respondents noticed his appearance. (ECF No. 6.)

On August 12, 2026, Mr. Mamani filed the instant Amended Petition and Motion. (ECF Nos. 7, 8.)

---

[3] Rule 1(b) of the Rules Governing § 2254 cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241. Rule 1(b), Rules Governing § 2254 Cases; *see Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007).

## II. Legal Standard

Federal Rule of Civil Procedure 65(b) sets forth the requirements for obtaining an *ex parte* temporary restraining order. Rule 65(b) states that "the court may issue a temporary restraining order without written or oral notice to an adverse party . . . only if:"

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

"'[T]he requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard, but rather crucial safeguards of due process.'" *Defend Arlington v. United States*, No. 1:23-cv-1730 (RDA), 2023 WL 8788956, at *5 (E.D. Va. Dec. 19, 2023) (quoting *Tchienkou v. Net Trust Mortg.*, No. 10-23, 2010 WL 2375882, at *1 (W.D. Va. June 9, 2010)). "To ensure that the rights of all concerned are protected, Rule 65(b) prescribes certain safeguards for the issuance of temporary restraining orders that must be scrupulously honored." *McKnight v. Frederick Cnty. Dep't of Soc. Servs.*, No. 5:24-cv-00088, 2024 WL 4979276, at *2 (W.D. Va. Dec. 4, 2024) (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2952 (3d ed.)). "Any temporary restraining order granted without notice must comply with the provisions of Rule 65(b) in order to assure the restrained party some measure of protection in lieu of receiving formal notice and the opportunity to participate in a hearing." *Id.* (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.)).

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a temporary restraining order affords an extraordinary remedy, the party seeking the

preliminary injunction must demonstrate by a "clear showing:" (1) that he or she is likely to succeed on the merits at trial; (2) that he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008) (citations omitted).[4] "Where, as here, the government is a party, the 'balance of the equities' and 'public interest' prongs of the preliminary injunction test merge." *B.P.J. v. W. Va. State Bd. of Educ.*, 550 F. Supp. 3d 347, 357 (S.D.W. Va. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The party seeking a preliminary injunction bears the burden of establishing that each factor supports granting the injunction. *Real Truth About Obama, Inc. v. Fed. Election Comm'n* ("*Real Truth*"), 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010)). The proponent must demonstrate each factor by a "clear showing." *Winter*, 555 U.S. at 22. The failure to show any one of the relevant factors mandates denial of the preliminary injunction. *Real Truth*, 575 F.3d at 346.

## III. Analysis

Mr. Mamani is entitled to a preliminary injunction. First, Mr. Mamani has satisfied Rule 65(b)(1)'s requirements for granting *ex parte* relief. Mr. Mamani has also shown a likelihood of success on the merits of his claims under the INA and his claims under the Fifth Amendment's Due Process Clause, has shown that he is likely to suffer irreparable harm, and that the balance of the equities and public interest weigh in his favor. For the reasons articulated below, the

[4] "The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted).

Court will grant Mr. Mamani's Motion and order Respondents to provide Mr. Mamani with a full and fair bond hearing.

**A. Mr. Mamani Has Satisfied the Procedural Requirements in Rule 65 for an *Ex Parte* Temporary Restraining Order**

As the Court explained above, a court may issue a temporary restraining order without written or oral notice to the adverse party only if two conditions are met: the movant sets forth "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate irreparable injury, loss, or damage will result to the movant before the adverse party can be heard," and the movant's attorney "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

As to the first requirement, for the reasons articulated below, Mr. Mamani has set forth sufficient factual information showing that, absent immediate *ex parte* relief, he will suffer irreparable injury. *See infra* Sections III.B–D, Mr. Mamani has likewise satisfied the second requirement. Mr. Mamani's counsel provided with the Motion a signed affidavit explaining that Mr. Mamani will suffer irreparable harm if "time is allotted for opposition from [R]espondents." (ECF No. 8, at 1, 2.)

Having determined that Mr. Mamani's Motion satisfies Rule 65(b)'s procedural requirements, the Court next considers the merits of Mr. Mamani's Motion, including whether he is likely to succeed on the merits, whether he is likely to suffer irreparable harm in the absence of a temporary restraining order, and whether the public interest and balance of the equities weigh in his favor.

**B. Mr. Mamani is Likely to Succeed on the Merits**

Mr. Mamani argues that ICE is unlawfully detaining him without a bond hearing and, for the reasons this Court set forth in *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va.

2025), he is entitled to a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a), and denial of that bond hearing violates his procedural due process rights under the Fifth Amendment. (ECF No. 7 ¶¶ 14–25; ECF No. 8, at 4–6.) The Court agrees.

**a. Mr. Mamani is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226**

Mr. Mamani argues that he is not an "applicant for admission" and is thus entitled to a bond hearing under 8 U.S.C. § 1226(a). (ECF No. 8, at 4–5; ECF No. 7 ¶¶ 14–17.)

Two immigration detention provisions are relevant to the Court's inquiry: 8 U.S.C. § 1225 and 8 U.S.C. § 1226. Section 1225 "applies to *arriving aliens*[,] whereas § 1226 generally governs the process of arresting and detaining aliens present in the United States pending their removal." *Hasan v. Crawford*, 800 F. Supp. 3d 641, 653 (E.D. Va. 2025) (quotations omitted) (emphasis added). An "arriving alien" is an "applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2; 8 C.F.R. § 1001.1(q). "An alien present in the United States who has not been admitted or who arrives in the United States" is "deemed" an applicant for admission. 8 U.S.C. § 1225(a)(1) (emphasis added). Applicants for admission are divided into two categories under § 1225: those covered by § 1225(b)(1) and § 1225(b)(2).

"Section 1225(b)(1) applies to aliens 'initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation,' as well as to other aliens who receive special designation by the Attorney General." *Id.* (first quoting 8 U.S.C. § 1225(b)(1)(A)(i), then citing § 1225(b)(1)(A)(iii)). Section 1225(b)(2) applies to "all other applicants." *Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)).

Detention under both §§ 1225(b)(1) and (b)(2) is mandatory. Relevant here, § 1225(b)(2) provides that if an "immigration officer determines that an [applicant for admission] *seeking*

*admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).[5]

Mr. Mamani has been in the country for over two decades. (ECF No. 7 ¶ 2.) He is thus not an "applicant for admission" subject to the mandatory detention provisions of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing aliens who are already in the country. *See Jennings*, 583 U.S. at 288–90, 303 (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country").[6] For the reasons set out in *Duarte Escobar*, the plain text of the

---

[5] Mr. Mamani does not explain whether he is detained under § 1225(b)(1) or § 1225(b)(2). However, he maintains that he has been in the United States for over two decades and that his circumstances are "no different" than those presented in *Duarte Escobar*. (ECF No. 7, at 2.) Based on these representations, the Court assumes for the purposes of this Memorandum Opinion that Respondents would contend that Mr. Mamani is detained under § 1225(b)(2), not § 1225(b)(1). In any event, regardless of whether Respondents purport to detain Mr. Mamani under § 1225(b)(2) or § 1225(b)(1), the Court finds that he is properly detained only under § 1226(a) and thus entitled to a bond hearing.

[6] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 217–18 (D. Mass. 2025). The July 2025 memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

INA,[7] Supreme Court precedent, district court decisions around the country, and decades of practice support this conclusion. 807 F. Supp. 3d at 575–81. Petitioner is therefore entitled to a bond hearing under § 1226(a) and its implementing regulations.

**b. Respondents Have Violated Mr. Mamani's Fifth Amendment Due Process Rights**

Mr. Mamani also argues that his detention without a bond hearing violates his due process rights under the Fifth Amendment's Due Process Clause. (ECF No. 7 ¶¶ 18–25.)[8] The Court agrees.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "To determine whether civil detention violates a detainee's Fifth Amendment

---

The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024). Indeed, the United States District Court for the Central District of California issued a nationwide declaratory judgment and vacatur under the Administrative Procedure Act against ICE's internal policy mandating that immigration detainees remain detained without a bond hearing. *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment stayed in part*, 5:25-cv-1873, ECF No. 129 (C.D. Cal. Mar. 6, 2025). In doing so, the *Bautista* court found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on a faulty statutory analysis, which *Bautista* rejected. *Id.* at 1106; *see also Duarte Escobar*, 807 F. Supp. 3d at 580. While the United States Court of Appeals for the Ninth Circuit recently stayed enforcement of the nationwide relief, *Bautista v. Dep't Homeland Sec'y*, No. 26-1044, ECF No. 17 (9th Cir. Mar. 31, 2026), the Court agrees with the *Bautista* court's finding regarding *Yajure Hurtado*.

[7] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2). The statute's use of active language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States. Presence in the country is not enough. *Duarte Escobar*, 807 F. Supp. 3d at 576. To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous. *Id.* at 576–77.

[8] Mr. Mamani claims that his detention violates both his procedural and substantive due process rights. (ECF No. 7 ¶¶ 23, 24.) Because the Court determines that Respondents have violated Mr. Mamani's procedural due process rights, it does not address Petitioner's substantive due process claims.

procedural due process rights, courts apply the familiar three-part test articulated in *Mathews v. Eldridge*." *Hasan*, 800 F.Supp.3d at 659 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). *Mathews* requires courts to weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335–36.

All three *Mathews* factors weigh in Mr. Mamani's favor. First, Mr. Mamani has a strong private interest in remaining free from physical detention. *Duarte Escobar*, 807 F. Supp. 3d at 582–83 ("'The interest in being free from physical detention'" is "'the most elemental of liberty interests.'") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Second, there is a significant risk of deprivation of Mr. Mamani's due process rights because he is entitled to a bond hearing under § 1226(a) that he has not received. *Duarte Escobar*, 807 F. Supp. 3d at 583 (explaining that a petitioner erroneously detained under § 1225(b)(2) had not received "even the *baseline* amount of process due to him regarding his detention status"); *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 409 (D.N.J. 2025) (""[T]he second *Mathews* factor weighs heavily in Petitioner's favor, as he is presently and erroneously detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing."). Third and finally, Respondents do not have an interest in holding Mr. Mamani without an individualized bond hearing. *See Duarte Escobar*, 807 F. Supp. 3d at 823. To the extent Respondents have an interest in immigration enforcement generally, the Court sees no reason that interest "'would not be adequately protected by the individualized determination of an immigration judge as to

whether an individual should be released on bond under section 1226(a) or their ability to have that release decision reviewed under the existing regulations.'" *Id.* (quoting *Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at *9 (E.D. Va. Sept. 29, 2025).

Because all three *Mathews* factors weigh in Petitioner's favor, the Court must find that Mr. Mamani's due process rights under the Fifth Amendment have been violated, meaning that he is entitled to a bond hearing

Having found that Mr. Mamani has made a clear showing that he is likely to succeed on the merits of his claim under the INA and the Fifth Amendment, the Court finds that the first *Winter* factor weighs in Mr. Mamani's favor. The Court now turns to whether Mr. Mamani has shown that he is likely to suffer irreparable harm without a temporary restraining order under the second *Winter* factor.

### C. Mr. Mamani is Likely to Suffer Irreparable Harm in the Absence of a Temporary Restraining Order

As the United States Court of Appels for the Fourth Circuit and the United States Supreme Court have recognized, "deprivation of a constitutional right, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Mr. Mamani has made a clear showing that Respondents likely violated his statutory rights under the INA, and his procedural due process rights under the Fifth Amendment. "Those violations 'unquestionably' constitute an irreparable injury." *Oladejo v. Perry*, No. 3:26-cv-449 (MHL), 2026 WL 2100176, at *14 (E.D. Va. July 21, 2026) (citing *Miranda*, 34 F.4th at 365); *Sarmiento v. Perry*, 824 F. Supp. 3d 514, 532 (E.D. Va. 2026) (finding that a petitioner's loss of liberty resulting from detention after he or she is denied a bond hearing constitutes irreparable harm); *Hernandez Marcelo v. Trump*, 801 F. Supp. 3d 807, 823–24 (S.D. Iowa 2025) (same).

Accordingly, Mr. Mamani has made a clear showing that his continued detention without a bond hearing creates a likelihood of irreparable harm. The second *Winter* factor weighs in Petitioner's favor. The Court proceeds to the third and fourth *Winter* factors.

### D. The Balance of the Equities and the Public Interest Favor Granting Temporary Injunctive Relief

Finally, Mr. Mamani's continued detention without a bond hearing must be balanced against the injury an injunction would inflict on Respondents and the public interest in granting Mr. Mamani a temporary restraining order. The balance of equities and the public interest favor Mr. Mamani.

The Court recognizes that the United States maintains an interest in the enforcement of its immigration laws. *See Miranda*, 34 F.4th at 364 ("Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest[.]"); *Hasan*, 800 F. Supp. 3d at 661 ("Of course, ensuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest.") (quotation omitted). But that interest extends only so far as Respondents properly—and constitutionally—enforce those laws. *See Hernandez Marcelo*, 801 F. Supp. 3d at 824–25. Here, the Court has found that Respondents acted contrary to the INA and in violation of Mr. Mamani's constitutional rights. Respondents "do not have [a]n interest in[] violation of the plain text of federal law." *Id.*

Moreover, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quotations and citations omitted). Because the Court has found that Respondents acted contrary to the INA and the United States Constitution, the

public interest favors granting Mr. Mamani a temporary restraining order. The third and fourth *Winter* factors weigh in Petitioner's favor.

## <u>IV. Scope of Relief</u>

Mr. Mamani argues that immediate release would be an appropriate remedy for his unlawful detention. (ECF No. 8, at 7.) In the alternative, Mr. Mamani requests an order directing Respondents to provide him with a bond hearing. (ECF No. 8, at 7.) For three reasons, the Court will order Respondents to provide Mr. Mamani with a bond hearing rather than immediate release. But the Court will require Respondents to bear the burden of proof at that bond hearing.

First, ordering a bond hearing allows the Court to tailor its remedy to the specific injury alleged by Mr. Mamani: deprivation of his access to a bond hearing. *Avelar Ramos v. Bondi*, No. 3:26-cv-112 (MHL), 2026 WL 614875, at *5 (E.D. Va. Mar. 4, 2026). Second, providing Mr. Mamani with a bond hearing aligns with the INA's statutory scheme, through which Congress and DHS, in enacting § 1226 and promulgating its implementing regulations, "have determined that an Immigration Judge is best situated to make a determination about whether an alien is a potential danger to the community or is a flight risk." *Id.* at *6. And third, the circumstances in which district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit have ordered immediate release instead of a bond hearing do not exist here. *Id.* For example, this Court has neither been "confronted with petitioners who have been detained, released, and re-detained by immigration officials," nor with evidence of Respondents' failure to comply with this Court's orders. *See id.* The Court will therefore order Respondents to provide Petitioner with a bond hearing rather than order his immediate release.

The Court will require Respondents to carry the burden of proof at that bond hearing.

As this Court explained in *Avelar Ramos*, given Respondents' "abject denial of [Mr. Mamani's] entitlement to a bond hearing, due process calls for additional safeguards to protect that entitlement." 2026 WL 614875, at *7–8.[9] Requiring Respondents to carry the burden of proof is one such safeguard.

Accordingly, the Court will order Respondents to provide Petitioner with a bond hearing during which Respondents will bear the burden of showing whether Mr. Mamani is a danger or a flight risk by clear and convincing evidence. Respondents must provide Petitioner's counsel with sufficient access to his client so that he can provide effective assistance of counsel in preparation for the hearing.

## V. Conclusion

For the reasons articulated above, Mr. Mamani has made a clear showing that he is likely to succeed on the merits of his claim that his detention violates provisions of the INA and the Fifth Amendment, that his continued detention presents a likelihood of irreparable harm, and that the balances of the equities and public interest favor granting a temporary restraining order. Accordingly, the Court will grant the Motion, (ECF No. 8), and order Respondents to provide

---

[9] In *Avelar Ramos*, this Court distinguished circumstances like those here—where a noncitizen petitioner detained under § 1226 was denied a bond hearing—from those addressed in the Fourth Circuit's decision in *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022). *Avelar Ramos*, 2026 WL 614875, at *7–8. As this Court explained, the *Miranda* court held that placing the burden of proof on a noncitizen to prove that he or she was not a risk of danger or a risk of flight did not violate due process because Miranda was afforded *three opportunities* to seek release from detention. *Id.* (citing *Miranda*, 34 F.4th at 358–65).

The present situation, as in *Avelar Ramos*, differs from that at issue in *Miranda* because Mr. Mamani "has been denied access to a bond hearing entirely." *Id.*; *see also Pineda-Medrano v. Bondi*, No. 1:25-cv-01870 (AJT), 2025 WL 3472152, at *3 n.5 (E.D. Va. Dec. 3, 2025) ("[N]owhere in [*Miranda*] did the Fourth Circuit hold—explicitly or implicitly—that the failure to comport with the procedures contemplated in section 1226(a), including the provision of a bond determination hearing, would also satisfy due process.").

Mr. Mamani with a full and fair bond hearing during which Respondents will bear the burden of showing that Mr. Mamani is a danger or a flight risk by clear and convincing evidence. *Avelar Ramos*, 2026 WL 614875, at *7–8.

The Court finds that a security is unnecessary in this case and will waive any requirement by Petitioner to post one. *See* Fed. R. Civ. P. 65(c); *Pashby v. Delia*, 709 F.3d 307, 331–32 (4th Cir. 2013) ("[A] district court retains the discretion to set the bond amount as it sees fit or waive the security requirement.").

An appropriate Order shall issue.

/s/
M. Hannah Lauck
Chief United States District Judge

Date: 8/14/2026
Time: 1:43 PM EST
Richmond, Virginia